**STATE of Missouri,
Plaintiff-Respondent,**

v.

**David Lee SALLEE,
Defendant-Appellant.**

No. 12081.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 5, 1981.

Motion for Rehearing or to Transfer
Denied Oct. 26, 1981.

Application to Transfer Denied
Dec. 14, 1981.

David Robards, Joplin, for defendant-appellant.

John Ashcroft, Atty. Gen., Rosalynn Van Heest, Kristie Green, Asst. Attys. Gen., Jefferson City, for plaintiff-respondent.

FLANIGAN, Judge.

A jury found defendant David · Sallee guilty of robbery in the first degree, Sec. 569.020,[1] and he was sentenced to 15 years imprisonment. Defendant appeals.

Defendant's first point is that the trial court erred in denying his motion to dismiss for failure to bring defendant to trial within the period prescribed by Sec. 222.160, the Agreement on Detainers,[2] and specifically the 180-day period prescribed by Art. III(1) thereof.

In early 1980 defendant, then a prisoner in the state of Oklahoma, made a "request for a final disposition" (See Sec. 222.160, Art. III) of the "untried complaint" in the instant proceeding then pending in Missouri.[3]

All of the events material to defendant's first point took place in 1980. Basing his calculation on the first clause of Art. III(1)[4] defendant asserts that the deadline for bringing him to trial under the agreement on detainers was October 6. Defendant argues that the proviso contained in the second clause Art. III(1) permits continu-

---

1. Unless otherwise indicated all references to statutes are to RSMo 1978 V.A.M.S.

2. See, generally, Sec. 222.160—Sec. 222.220.

3. Defendant's brief details certain procedural defects which may taint his "request for a final disposition" but seeks to excuse them. For the purpose of this opinion this court assumes that defendant complied with Art. III(1) of Sec. 222.-160.

4.                    "ARTICLE III

1. Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprison-

ment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint; provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. . . . ''

ances only "for good cause shown in open court, the prisoner or his counsel being present." The two-day trial began on October 15. As the following chronology will demonstrate, any noncompliance with the deadline was directly attributable to defendant's attorney David Robards, the public defender.

The case was set for jury trial on October 1 and defendant's brief makes no claim that he and his counsel had not received adequate notice of that setting. "About" September 24, according to attorney Robards, he, Robards, informed the secretary of. Judge Ben F. Pyle, the trial judge, that "I was not prepared on the case and that I needed to get some out-of-state witnesses and that I was not anxious to have the case set for trial right away." Pursuant to that information the court reset the trial for October 3, a setting still within the 180-day period. On October 1 Robards had another conversation with Judge Pyle's secretary in which Robards stated that defendant was not ready to go to trial on October 3 because he "needed some out-of-state witnesses which were essential to the defense." [5] Pursuant to that information the court reset the trial for October 15. On October 14 defendant filed his motion to dismiss based on the alleged violation of the 180-day requirement.

In *State v. Barrett,* 406 S.W.2d 602 (Mo. 1966), the defendant argued that his constitutional right to a speedy trial (Sixth Amend. U.S. Const.; Art. I, Sec. 18(a) Mo. Const.) and his similar right under statutes there cited were violated by the granting of continuances. Rejecting the contention the court said, at p. 604: "The record here affirmatively shows that the appellant sought or by his own conduct caused the continuances and of course is in no position to now complain." To similar effect see *State v. Hollis,* 584 S.W.2d 137, 142[5] (Mo. App.1979). See also 57 A.L.R.2d 302, 309.

■ A continuance granted at the request of defendant's attorney tolls the 180-

day period of the "agreement on detainers," even if the request is made orally and out of court. *Com. v. Washington,* 411 A.2d 490, 491 (Pa.1979); *State v. Carlson,* 258 N.W.2d 253 (N.D. 1977); *State v. Earnest,* 265 So.2d 397 (Fla.App.1972); *State v. Davis,* 44 Ohio App.2d 95, 335 N.E.2d 874 (Ohio App. 1975).

In *Carlson* the court made short shrift of the contention that a continuance granted pursuant to an oral request by defendant's attorney did not toll the statutory period. The court said it would be unreasonable and unduly burden the courts to require that every agreement between attorneys of record [6] be reduced to writing or formally approved by an order of the court. The court also said: "[L]awyers, in addition to being officers of the court in this State, are subject to a strict code of professional responsibility, making any violation thereof grounds for disciplinary action which may result in either a suspension or revocation of the right to practice law.... The defendant may not have things both ways. He may not have the benefit of a delay and then turn about and charge the State with such delay."

*Earnest* holds, and *Carlson* approves the holding, that the defendant's attorney's request for a continuance was binding on the defendant whether or not defendant himself was informed of the request or gave his express consent to it. The court in *Earnest,* at p. 400, said that to hold otherwise "would not only make a mockery of the law but would seriously impair the ability of our trial courts to dispatch in an efficient manner the crushing load of criminal cases pending in those courts."

Defendant's first point glaringly lacks merit.

■ Defendant's second point is that the trial court erred in giving Instruction 4, the state's verdict-director, because there was a fatal variance between the information and Instruction 4. The information charged

---

**5.** At the trial the defense was alibi. Defendant himself did not testify but his two alibi witnesses were his sister and her husband who lived in Stroud, Oklahoma.

**6.** The instant record does not show whether or not attorney Robards made his oral requests with the knowledge and consent of the prosecutor.

that the defendant "forcibly stole approximately $575 in cash in the possession of Debra Anderson and in the course thereof defendant was armed with a deadly weapon, to-wit: a pistol." The third paragraph of Instruction 4 required the jury to find "that in the course of stealing the property, the defendant displayed or threatened the use of what appeared to be a deadly weapon or dangerous instrument."[7]

Defendant does not challenge the sufficiency of the evidence to support a conviction of the offense, either as charged in the information or as submitted in the instruction.

Defendant relies on the following language contained in *State v. Shepard*, 442 S.W.2d 58, 60 (Mo. banc 1969): "It has long been the rule that when a crime may be committed by any of several methods, the information must charge one or more of the methods, and the method or methods submitted in the verdict directing instruction must be among those alleged in the information."

In *Shepard*, unlike the situation here, the evidence was insufficient to support the giving of the challenged instruction. In *State v. Mapp*, 478 S.W.2d 378 (Mo.1972), the foregoing "rule" was quoted although the court characterized it as a "rather rigid approach."

A variance between the information and an instruction, to be fatal and justify reversal, must be material and prejudicial to the rights of the defendant. *State v. Johnson*, 606 S.W.2d 655, 657 (Mo.1980); *State v. Crossman*, 464 S.W.2d 36, 42 (Mo.1971); *State v. Macone*, 593 S.W.2d 619, 621 (Mo. App.1980); *State v. Collins*, 519 S.W.2d 362, 364 (Mo.App.1975). It has also been said that a variance between allegation and proof is not fatal unless the variance was material to the merits of the case and prejudicial to the defense of the defendant. *State v. Davis*, 482 S.W.2d 486, 488 (Mo.

1972); *State v. Jarrett*, 481 S.W.2d 504, 509 (Mo.1972). Rule 29.12(a) V.A.M.R. reads, in part, "Any ... variance which does not affect substantial rights shall be disregarded."

In the case at bar the information alleged and the state's evidence showed that the defendant was armed with a pistol. Unlike the information, the instruction required proof of its display or threatened use. See *Collins*, supra, where the court stated that the instruction, held to be a nonprejudicial variance, "merely increased the State's burden."

Here the defense was alibi. Defendant adduced evidence to the effect that at the time of the robbery in Joplin, Missouri, he was in Stroud, Oklahoma ("3½ hours away"). The manner in which the gun was used was not a live issue or an issue at all.

Defendant's second point has no merit.

The judgment is affirmed.

GREENE, P.J., and TITUS, J., concur.

7. Section 569.020 reads, in pertinent part:

"1. A person commits the crime of robbery in the first degree when he forcibly steals property and in the course thereof he, or another participant in the crime,

(1) ... or

(2) Is armed with a deadly weapon; or

(3) ... or

(4) Displays or threatens the use of what appears to be a deadly weapon or dangerous instrument.

